# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Harry D. Leinenweber | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 3768 cons. for all purposes w/03 C 2293 | **DATE** | 4/7/2004 |
| **CASE TITLE** | Equal Employment Opportunity Commission vs. Custom Companies, Inc., et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: Custom's Motions to Limit the Class in Cases Nos. 02 C 3768 and 03 C 2293 are GRANTED with regard to rearward time but DENIED with regard to forward time limits.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | | |
| | No notices required. | | number of notices | | |
| | Notices mailed by judge's staff. | | | | |
| | Notified counsel by telephone. | | APR 08 2004 | | |
| ✓ | Docketing to mail notices. | | date docketed | | |
| | Mail AO 450 form. | | | | |
| | Copy to judge/magistrate judge. | | docketing deputy initials | | |
| WAP | courtroom deputy's initials | | date mailed notice | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | | |

APR 7 2004

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

JUDGE HARRY D. LEINENWEBER
U.S. DISTRICT COURT JUDGE

        Plaintiff,

Case No. (02 C 3768)

    and

Consolidated for all
Purposes with
Case No. 03 C 2293

CATHERINE COPELLO and ALLISON
KENNEDY,

        Plaintiffs-Intervenors,

Hon. Harry D. Leinenweber

        v.

CUSTOM COMPANIES, INC., and
CUSTOM DISTRIBUTOR NETWORK,
INC.

**DOCKETED**

APR 0 8 2004

        Defendants.

### MEMORANDUM OPINION AND ORDER

Before the Court are Defendants' Motions to Limit the Class in
Case Nos. 02-C-3768 and 03-C-2293. (These cases were consolidated on
July 7, 2003.) For the following reasons, the Motions are granted in
part and denied in part.

## I. BACKGROUND

### A. The Sexual Harassment Class Action (Case No. 02-C-3768)

Custom Companies, Inc. ("Custom") employed Catherine Copello
("Copello") as a sale representative from 1994 until her discharge in
November 1999. On January 14, 1999, Copello filed a timely charge of
discrimination with the United States Equal Employment Opportunity
Commission (the "EEOC"), alleging that throughout her employment she
and other female employees at Custom were subjected to sexual

91

discrimination, sexual harassment, and retaliation. In November 1999, Copello filed an amended charge of discrimination with the EEOC, alleging that Custom retaliated against her for filing the initial EEOC charge. In April 2000, Copello filed a second amended charge with the EEOC alleging retaliation and sexual discrimination.

The EEOC investigated Copello's charge of discrimination and issued a Determination letter on September 6, 2001, finding that the evidence gathered in the investigation established reasonable cause to believe that Custom had discriminated against a class of female employees "by subjecting them to a sexually hostile, offensive work environment, in violation of Title VII." The EEOC's conciliation efforts failed, and it thereafter filed a civil action against Custom under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., and Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981a. The amended complaint contains class-wide allegations of both discriminatory treatment under 42 U.S.C. § 2000e-5 ("Section 706") and pattern and practice allegations under 42 U.S.C. § 2000e-6 ("Section 707"). The EEOC alleges that "[s]ince at least 1994," Custom "engaged in a pattern or practice of unlawful employment practices." Am.Compl.¶ 7. These purported practices include pressures to "entertain" customers at "strip clubs," company outings attended by strippers, groping and sexual touching, pornographic materials on display on work computers, and lewd sexual language. See id.

## B. The Retaliation Class Action (Case No. 03-C-2293)

Corrine Miller ("Miller") began her employment at Custom in 1995. In early 1999, and again in mid-1999, she testified in support of a complainant in an internal sexual harassment investigation at Custom. On December 27, 1999, Custom discharged Miller. On June 26, 2000, Miller filed a charge of discrimination with the EEOC alleging that Custom had discriminated against her and terminated her in retaliation for her participation in the internal sexual harassment investigation. Following an investigation of Miller's charge, and failed conciliation efforts, the EEOC filed the present action against Custom on April 2, 2003. The EEOC alleges "retaliatory practices" on behalf of a class of female employees, claiming that since at least 1998, Custom has altered job duties, reduced compensation, disciplined, and discharged class members in retaliation for employees "opposing sex harassment." *See* Compl. ¶ 8.

## C. The Court's October 27, 2003 Ruling

On October 27, 2003, this Court denied Plaintiff-Intervenor Allison Kennedy's ("Kennedy") motion to intervene under Federal Rule of Civil Procedure 24(a)(1). *See Custom Companies, Inc. v. EEOC*, 2003 WL 22455510 (N.D. Ill. 2003). Custom employed Kennedy as a sales representative between August 17 and October 20, 1998. She claimed that she faced a sexually hostile environment during these two months of employment. Custom terminated Kennedy in October or November 1998. This Court held that Kennedy could not intervene in the retaliation class action because her claims were time-barred.

Specifically, the Court found that the retaliation class action was bound by the 300-day time frame preceding Miller's June 26, 2000 EEOC charge. Therefore, any claims preceding August 31, 1999, including Kennedy's claims, were time-barred. The Court also held that Kennedy could not avail herself to the "single-filing" doctrine to piggyback onto Miller's claim because this doctrine is available only to those parties who could have filed a claim with the EEOC based on the same unlawful conduct within the required statutory period. *See id.*

## II. DISCUSSION

### A. Limits on the Class in the Sexual Harassment Action

#### 1. *Rearward time limits on the class*

In Illinois, a plaintiff alleging Title VII violations must file charges with the EEOC within three hundred days of the alleged discriminatory employment practice (the "filing period"). *See* 42 U.S.C. § 2000e-5(e)(1); *Koelsch v. Beltone Elecs. Corp.*, 46 F.3d 705, 707 (7th Cir. 1995). One of the issues raised in these Motions is whether a hostile work environment claim that includes continuing violation allegations can include claims of employees who did not work at Custom during the filing period (i.e., more than 300 days before Copello filed her EEOC charge or March 20, 1998). In other words, can the class of plaintiffs here include employees who were not exposed to any discriminatory acts during the filing period because Custom no longer employed them. (The Court recognizes that EEOC enforcement actions brought on behalf of a class of individuals

are not "true" Federal Rule 23 class actions, *see General Telephone Co. v. EEOC*, 446 U.S. 318 (1980), but for purpose of clarity, it will use such terms as "class action" and "class membership.")

Custom argues that a continuing violation claim cannot revive otherwise stale claims, and, accordingly, class membership must be limited to those individuals who were employed at some point during the filing period. Under Custom's view, employees who left Custom before March 20, 1998 "could not have been subjected to any allegedly hostile work environment during the 300-day limitations period, and therefore could not have timely filed an EEOC charge on January 14, 1999 [the date that Copello filed her charge]." Defs. Br. at 6. The EEOC, in turn, contends that under a continuing violation theory, Custom can be liable for acts that predate the 300-day filing period, and therefore class membership cannot be so limited. *See* Pls. Resp. Br. at 4-8.

As a preliminary matter, Custom relies heavily on this Court's October 27, 2003 ruling ("prior ruling") to support its argument. At issue in the prior ruling was whether a plaintiff-intervenor could rely on the "single filing" doctrine to revive her stale claim. The Court held that it could not, based, in part, on the problems of notice to employers and "long-standing notions of finality and prompt resolution of claims." *Custom Companies, Inc.*, 2003 WL 22455510 at *4. At that point, however, the Court did not have the opportunity to consider the crucial issue here: whether the continuing violation doctrine could allow claims of class members that occurred entirely

- 5 -

outside of the filing period. Accordingly, the prior ruling informs the present opinion, but does not control the outcome here.

### a. The case law supports Custom's position

Turning now to the case law, the Court must begin with a discussion of the fairly-recent United States Supreme Court decision in *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), which the EEOC contends is controlling authority here. The EEOC relies heavily on *Morgan* to support its proposition that a hostile work environment claim that contains continuing violation allegations allows a court to "look beyond the 300-day charge filing period and impose liability based on the claims of class members employed outside 300 days." Pls. Resp. Br. at 4. Custom argues vigorously that *Morgan* simply "clarified the continuing violation doctrine solely as it applies to an individual's hostile work environment claim" and "does not permit a plaintiff, simply by alleging a continuing violation, to resurrect the time-barred claims of former employees." Defs. Reply Br. at 6.

Custom has the better view of *Morgan*. In *Morgan*, the plaintiff filed an individual complaint, alleging racial discrimination, consistent harassment, and retaliation from his former employer. *See Morgan*, 536 U.S. at 105-06. Plaintiff did not raise class allegations, and the EEOC did join in the suit. *See id.* The issue in *Morgan* was whether the employer could be liable for acts that occurred more than 300 days before plaintiff filed the EEOC charge. In deciding which acts could be considered, the Supreme Court

distinguished between discrete retaliatory acts, such as termination, failure to promote, or denial of transfer, and the continuous acts of harassment that constitute a hostile work environment. *See id.* at 114-16. Specifically, hostile environment claims, unlike discrete acts of discrimination, depend by nature "on the cumulative effect of individual acts" across time, and a single act of harassment often is not actionable on its own. *Id.* at 115. In other words, "a hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'" *Id.* at 116. Relying upon the unique nature of hostile environment claims, the *Morgan* Court held that an employer may be liable for acts occurring outside of the 300-day filing period, provided that (1) at least one act contributing to the claim occurs within the filing period and (2) the acts falling outside of the 300-day filing period are part of the same actionable hostile environment claim. *See id.* at 117, 120-21. Discrete acts outside the filing period, however, are not actionable under a continuing violation theory, although they may be used as evidence of a hostile environment claim. *See id.*

Thus, *Morgan* stands solely for the proposition that under an individual hostile work environment theory, an employer may be liable for acts of harassment *against the same individual plaintiff* that occurred before the filing period, provided that such acts are part of the same continuing pattern of harassment. *Morgan* is silent on whether a class can include class members who did not experience any acts of harassment during the filing period. (Further, *Morgan* did

not alter the "single filing" doctrine, which, under this Court's reasoning in the October 27, 2003 ruling, would bar the inclusion of class members whose employment ended outside of the filing period.)

Having dispensed with the sole Supreme Court authority cited by the parties, the Court now addresses the parties' Seventh Circuit authority. Unfortunately, as shown below, there is competing Seventh Circuit authority on this issue, which provides ammunition for both parties. Custom initially points to *Movement for Opportunity and Equality v. General Motors Corp.*, 622 F.2d 1235, 1248, 1256 (7th Cir. 1980)(hereinafter *"Movement"*), which this Court relied upon in its prior ruling. In *Movement*, the Seventh Circuit held that the determination of class action claims depended on "which individual charges apply to which class claims in order to determine the earliest charge filed relative to each class." *See id.* at 1248. The *Movement* court noted that "it is not necessary that each class member have filed a charge with the EEOC for support; however, only those who could have filed a charge at or after the time a charge was filed by the class representative can be included in the charge." *See id* (citations omitted). Thus, *Movement* provides controlling authority for the proposition that class membership must be tethered to the earliest underlying EEOC charge. Here, the only charge in the sexual harassment class action is Copello's January 14, 1999 charge, and therefore, under *Movement*, class membership should be limited to only those employees who could have filed a charge in the preceding 300 days. (As discussed below, the EEOC seeks to distinguish *Movement* on

the basis that the lawsuit there sought to vindicate solely private, rather than public, rights.)

Custom also relies on *In re Consolidated Pretrial Proceedings in the Airline Cases*, 582 F.2d 1142 (7th Cir. 1978)(hereinafter *"Airlines"*); *rev'd in part on other grounds, sub nom by Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 399 (1982). In *Airlines*, a female flight cabin attendant brought a class action alleging Title VII sex discrimination because of an airline policy to ground all pregnant female employees. Siding with a defendant airline, the Seventh Circuit declined to extend the continuing violation theory and excluded from the class all employees who were terminated more than 90 days prior to the date that the EEOC charge was filed (90 days was the governing filing period at the time of this case). *See id.* at 1147. The court noted: "it is the continuity of the employment relationship that sustains the violation, and when that relationship is severed, the violation ceases." *Id.* at 1149.

EEOC seeks to distinguish *Airlines* on the basis that (1) the Supreme Court purportedly overturned the Seventh Circuit's ruling, and (2) *Airlines* did not address hostile environment claims brought by the EEOC, but rather involved solely private litigants. The EEOC's claim that the Supreme Court overturned the Seventh Circuit's ruling pertaining to the application of the continuing violation doctrine is incorrect. In *Zipes*, the Supreme Court overturned only the Seventh Circuit's determination that the timely filing requirement was jurisdictional, and hence not subject to a waiver

- 9 -

analysis. *See Zipes*, 455 U.S. at 392-99. The Supreme Court did not review the Seventh Circuit's reasoning pertaining to the continuing violation doctrine, and, as a result, it remains viable Seventh Circuit law. (The Court will address below the EEOC's argument relating to the fact that *Airlines* involved only private litigants.)

Custom also relies on several district court cases from this circuit (and other circuits) to support its argument that class membership is limited to only those employees who could have filed an EEOC charge during the filing period. *See, e.g., EEOC v. Harvey L. Walner & Assoc.*, 1995 WL 470233 (N.D. Ill. 1995)(hereinafter "*Walner I*"), *aff'd on other grounds, EEOC v. Harvey L. Walner,* 91. F.3d 963 (7th Cir. 1996) (hereinafter "*Walner II*"); *Daniels v. Federal Reserve Bank of Chicago,* 194 F.R.D. 609 (N.D. Ill. 2000). *Walner I* is perhaps Custom's strongest case because of the similarities to the present case. In *Walner I*, the EEOC filed a complaint alleging that "a class of female employees" had been subjected to a hostile environment based on sexual harassment by an employer law firm. *See Walner*, 1995 WL 470233 at *1; *Walner*, 91 F.3d at 965. The EEOC also included allegations of a continuing violation. *See Walner*, 91 F.3d at 969-70. Defendants sought to exclude certain former employees from the class because they failed to file discrimination charges with the EEOC within the requisite 300 days, and were terminated well before the filing period. *See id.* at *1. The court agreed, holding that the while the EEOC has the



authority to bring class claims arising out of an investigation of an individual EEOC charge, it cannot "resurrect untimely claims" because such "a result would improperly expand the substantive rights of the individuals which the EEOC represents and would render the 300-day filing period effectively meaningless." *See id.* at *4. The court noted the "anomaly" that would result if the procedural device of class actions could expand substantive rights by reviving otherwise time-barred claims:

> Courts which have considered the question directly have uniformly held that only those employees who could have filed charges with the Commission individually when the class filing was made are properly members of the litigating class.

*Id., quoting Laffey v. Northwest Airlines, Inc.,* 567 F.2d 429, 472 (C.A.D.C. 1976). The *Walner I* court also noted that "the rule permitting a Title VII class action based on only a single EEOC filing to proceed is inapplicable to the claims of former employees" because the primary justification for such a rule - that the employer has sufficient notice from a single charge — does not apply in the case of long-deserted employees. *See id.*

Finally, the *Walner I* court held that the continuing violation theory did not permit time-barred claims from former employees:

> The EEOC is attempting to bootstrap [the former employees'] stale claims onto [plaintiff's] timely charge by alleging these individuals' claims are merely part of a continuous and ongoing course of discriminatory conduct which extends, through [plaintiff's] allegations, well into the applicable 300-day limitations period.

*Id.* at *6. The court's refusal to entertain the continuing violation
doctrine was based on its conclusion that the EEOC's pattern and
practice allegations were merely "a conglomeration" of "recognizable
and independently actionable occurrences" and "not the type of
continuing violation which would permit this Court to consider the
stale claims of parties who elect not to file charges with the EEOC
within the requisite 300-day period." *Id.; see also id.* at *8, n.2.
Thus, *Walner I* confusingly appears to leave the door open, albeit in
*dicta*, for the argument that some types of continuing violations may
resurrect stale claims. (The EEOC does not rely on this language,
and, in any event, its persuasive value is extremely limited, given
the discussion below.)

To limit *Walner I*, the EEOC argues that "the Seventh Circuit
explicitly rejected" the district court's approach in *Walner I*. *See
Walner,* 91. F.3d at 970. This is not accurate. The Seventh Circuit
affirmed the district court's decision, but did so on the grounds
that the EEOC lacked standing to bring the complaint because there
was no viable charge to base its claims upon. *See id.* The EEOC
focuses on the following *dicta* to support its contention:

> The district court examined the viability of the
> claims presented by these five women as
> potential bases for the EEOC's complaint. As we
> have noted above, this was not required under a
> continuing violation theory of discrimination
> under Title VII had the EEOC satisfied the
> administrative prerequisites with respect to
> [plaintiff's] charge.

*Id.* In essence, the EEOC argues that this statement shows that the Seventh Circuit held that as long one timely charge exists, the viability of other time-barred claims is irrelevant under a continuing violation theory. The EEOC has this *dicta* passage perform too much work. All that the Seventh Circuit "noted above" was the general rule that a single viable charge is all that is normally required to support a class complaint containing continuing violations allegations. It is true that the fact pattern in *Walner* included time-barred claims, but the Seventh Circuit was focused here on solely whether there was any basis to support the EEOC's standing. It did not engage in any substantive review of whether the continuing violation doctrine could revive the time-barred claims of other potential plaintiffs · nor could it, as the EEOC had abandoned its continuing violation argument on appeal. *See id.* at 969. As a result, stretching this *dicta* language into a holding that a class action containing a continuing violation theory can revive time-barred claims is untenable.

Custom also relies on *Daniels*, where plaintiffs sought to bring a class action employment discrimination case that would include all affected employees since 1964. The defendant argued that only those employees who could have filed a timely suit should be included in the class. *See Daniels*, 194 F.R.D. at 617. Plaintiffs, in turn, contended that the continuing violation doctrine applied, such that "all claims from 1964 to the present" were properly before the court. *See id.* Relying on *Movement* and *Walner I*, the court held that

- 13 -

continuing violation doctrine permits only the inclusion of additional, but otherwise time-barred *claims* - not the inclusion of otherwise time-barred *parties*. *See id*. at 617-18.

The EEOC, in turn, points out that there are several district court cases within this circuit that hold that class membership can include employees employed outside the 300-day filing period. *See, e.g., EEOC v. Chicago Miniature Lamp Works,* 640 F. Supp. 1291 (N.D. Ill. 1988)(hereinafter "*Lamp Works*"); *EEOC v. Mitsubishi Motor Manf. of America, Inc.,* 990 F. Supp. 1059 (C.D. Ill. 1998)(hereinafter *Mitsubishi*); *EEOC v. Dial Corp.,* 156 F. Supp. 926 (N.D. Ill. 2001). In *Lamp Works,* an employee and the EEOC raised class allegations of employment discrimination covering an eleven-year period. The defendant argued that only those employees who were discriminated against during the filing period could become members of the class. *See id.* at 1293-94. The EEOC argued in response that the defendant had engaged in a "continuing violation" and therefore every victim throughout the eleven-year period could be a class member. *See id.* The court noted that "[c]ourts applying the 'continuing violation' notion to the longstanding-discriminatory-practice situation may effectively treat the EEOC filing as relating back to the onset of that period, bringing earlier acts of discrimination within the limitations period." *Id.* at 1294. Relying on a Second Circuit decision, the court held that "[b]ecause [defendant] engaged in a continuing course of discrimination against black persons, even persons who suffered discrimination during the earlier part of that

continuous period (and not just within the 300 days) can become class members entitled to relief." *Id.* at 1296.

The EEOC also points to *Mitsubishi* and *Dial* for support. These cases provide the EEOC with an alternate theory to include otherwise time-barred claims. Specifically, the EEOC argues that *Mitsubishi* and *Dial* establish that the 300-day filing period in Section 706 cases does not apply to Section 707 "pattern or practice" cases. In *Mitsubishi*, a Commissioner's charge initiated a Section 707 "pattern or practice" discrimination action. The defendant argued, among other things, that employees who left the company more than 300 days before the Commissioner filed his charge should be time-barred. *See Mitsubishi,* 990 F. Supp. at 1083. The court held that the 300-day limitations period did not apply to pattern or practice cases, and thus claims before the 300-day filing period were not time-barred. *See id.* at 1085. The *Mitsubishi* court placed great emphasis on the fact that the case before it was initiated by a Commissioner's charge, rather than an individual charge:

> By its nature, the Commissioner's charge alleging a pattern or practice of sexual harassment is not filed within 300 days of any particular incident of sexual harassment, because it is not based on an individual charge, but rather on the evidence gathered over a course of time showing a pattern of harassment against many individuals. . . . Without any single incident of discrimination, from which to start the 300-day clock running, a court cannot determine when a Commissioner's charge is timely filed."



*Id.* at 1085. Thus, according to the court, a Section 707 pattern or practice case is "not amenable to a timeliness determination." *Id.*

In *Dial*, the defendant claimed that the 300-day limitations period barred class members from obtaining individual relief for discrimination occurring before the period, despite the EEOC's allegations of a continuing violation. *See Dial*, 156 F.Supp. 2d at 966. Relying exclusively on the *Mitsubishi* court's reasoning (even though the case before it was based on an individual charge and not a Commissioner's charge), the *Dial* court held that "in pattern-or-practice litigation, the 300-day requirement is arbitrary as to those individual claims since 'the purpose of the limitations period is to prevent the filing of stale claims.'" *See id.* at 968, *quoting Mitsubishi*, 990 F. Supp. at 1085. Under the *Dial* court's reasoning, because of the continuous nature of the discriminatory policy, "an employer that maintains a continuing violation neither deserves nor obtains repose." *See id.*, *quoting EEOC v. City of Chicago*, No. 85 C 7281, 1989 WL 134788 at * 9 (N.D. Ill. 1989).

Custom devotes a significant portion of its opening brief attempting to show that *Mitsubishi*, and its progeny, *Dial*, are inapposite and, in any event, wrongly decided. Custom relies primarily on a Virginia district court case that disagreed with the analysis in *Mitsubishi*. *See EEOC v. Optical Cable Corp.*, 169 F. Supp. 2d 539 (W.D. Va. 2001). In *Optical Cable*, the EEOC brought a pattern or practice case under Section 707 against an employer. The

employer argued that the EEOC complaint was untimely with respect to those individuals who did not suffer an adverse employment action within the governing 180-day filing period, even in the face of a continuing violation allegation. *See id.* at 544-45. The court first considered whether the 180-day period governing Section 706 claims applied to Section 707 pattern or practice claims. *See id.* at 546-47. Relying on the plain language of the statute, the court held that the same limitations period governs both Section 706 and Section 707 claims. *See id.* The court also suggested, without reaching a final decision, that a continuing violation could not revive stale claims and to hold otherwise would allow "the court-made continuing violation doctrine" to nullify the statutory period of limitations. *See id.* at 549.

This Court is persuaded by the reasoning in *Optical Cable.* The plain language of the Title VII statute dictates that Section 706's 300-day filing period applies to Section 707 actions: "[a]ll such [Section 707] actions shall be conducted in accordance with the procedures set forth in section 2000e-5 [Section 706] of this title." 42 U.S.C. § 2000e-6(e); see *Optical Cable,* 169 F. Supp. 2d at 547. *Mitsubishi* can be distinguished by, among other reasons, its dependency on a Commissioner's charge. *See Mitsubishi,* 990 F. Supp. at 1083. This predicate fact caused great concern to the *Mitsubishi* court that any consideration of timeliness would be arbitrary. *See id.* In contrast, Copello's individual charge here clearly establishes the parameters of the 300-day filing period. *Dial* is

unpersuasive because it wholesale adopts *Mitsubishi's* reasoning without considering that the *Mitsubishi* court relied heavily on the presence of a Commissioner's charge - a fact that did not exist in *Dial*, which was based on an individual charge. *See Dial*, 156 F. Supp. 2d at 966.

Thus, the Court is presented with somewhat contradictory district court opinions. Neither party convincingly distinguishes these cases on sound analytic grounds. (And the Court fares no better.) For instance, the EEOC seeks to distinguish Custom's authority on the basis that none of Custom's cases addresses the situation "where a Court has limited the class when there is a continuing violation, or a pattern or practice, of hostile environment sexual harassment." Defs. Surreply Br. at 6. (*Walner I* did, in fact, address such a situation, but the EEOC contends, incorrectly, that *Walner II* overruled the pertinent reasoning.) Setting aside the EEOC's erroneous view regarding *Walner I*, this distinction has little significance. The EEOC certainly provides no authority for the proposition that hostile environment sexual harassment allegations *per se* are afforded a unique application of the continuing violation doctrine, as opposed to other types of hostile environment or other discriminatory conduct. That is, the crucial issue here is the ability of the continuing violation doctrine to revive stale claims involving *any sort* of continuing discriminatory conduct.

Custom's attempt to distinguish the EEOC's case law is similarly unavailing. For instance, Custom argues that the EEOC's cases address only "discrete acts," which no longer constitute a continuing violation following the recent *Morgan* decision. This argument, however, misses the key analytic issue presented in these cases: whether the continuing violation doctrine itself can somehow revive stale claims of *any sort*. That *Morgan* limited the category of acts that can be subjected to a continuing violation analysis does not *ipso facto* undermine the reasoning contained in these opinions, as applied to non-discrete acts.

At the end of the road, the Court finds that Custom's authority is stronger and more-consistent with the policy underlying Title VII's procedural requirements. Custom at least cites *some* controlling authority from the Seventh Circuit that supports its argument. See *Movement*, 622 F.2d 1235; *In re Airlines,* 582 F.2d 1142. The EEOC does not cite any controlling authority for its position. In addition, the district court cases cited by Custom are analytically more-sound and in greater harmony with the policies underlying Title VII, as shown below.

### b. Policy considerations favor Custom's position

Custom's argument is also more-consistent with Title VII policy (as well as this Court's prior ruling). The relatively short filing period in Title VII is not by accident: Congress intended a short limitations period to encourage prompt processing and resolution of employment discrimination claims. See *Morgan*, 536 U.S. at 108,

*citing Mohasco Corp. v. Silver*, 447 U.S. 807, 826 (1980). Lower courts "are compelled by the text of statute" and should not alter the timely filing requirements of Title VII. *Id.* When taken to its logical conclusion, the EEOC's argument would eviscerate *any* limitations period in Title VII cases, so long as the plaintiff alleges a continuing violation. Any employer accused of a continuing violation or pattern or practice hostile environment allegations faces exposure to unlimited claims from long-departed employees. This Court cannot nullify the statutory provisions of 42 U.S.C. § 2000e-5(e)(1) in this manner.

The Court acknowledges that the very nature of hostile environment claims encompass acts that are sufficiently subtle to go undetected for long periods of time. *See Morgan*, 436 U.S. at 115-16. As the *Morgan* court noted:

> The unlawful employment practice therefore cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own. . . . Such claims are based on the cumulative effect of individual acts.

*Id.* at 115. As a result, there may be employees who experience *some* of the effects of a hostile work environment, but yet have no legal recourse because the conduct has not reached sufficient "cumulative effect" to be actionable until after the employee departs. *Id.* Ultimately, however, this reflects nothing more than a variation on the inherent tension behind any statute of limitations:

> Statutes of limitations . . . represent a
> pervasive legislative judgment that it is unjust
> to fail to put the adversary on notice to defend
> within a specified period of time and that 'the
> right to be free of stale claims in time comes
> to prevail over the right to prosecute
> them. . . . [T]hey protect defendants and the
> courts from having to deal with cases in which
> the search for truth may be seriously impaired
> by the loss of evidence, whether by death or
> disappearance of witnesses, fading memories,
> disappearance of documents, or otherwise.

*United States v. Kubrick*, 444 U.S. 111, 117 (1979), *quoting Railroad Telegraphers v. Railway Express Agency*, 321 U.S. 342, 349 (1944) (internal citation omitted). Accordingly, the Court must uphold the limitations provisions outlined in Title VII.

The EEOC raises one final argument, essentially couched in policy terms, in which it argues that cases where "the EEOC is seeking enforcement of Title VII on behalf of the public good" are "different because the plaintiff is not merely a private litigant." Pls. Resp. Brief at 10. For instance, the EEOC points out that EEOC enforcement actions containing class allegations are not subject to Rule 23 of the Federal Rules of Civil Procedure. *See General Telephone Co. v. EEOC*, 446 U.S. 318 (1980); *In re Bemis Co., Inc.*, 279 F.3d 419, 421 (7th Cir. 2002). Relying primarily on *General Telephone*, the EEOC claims that its ability to vindicate public rights entitle it to avoid procedural limitations that may otherwise encumber private litigants. To a certain degree, this is true, but the EEOC does not provide any controlling authority permitting it to expand substantive rights, such as reviving stale claims. *See*

*Wainer I*, 1995 WL 470233 at *4; *cf. EEOC v. Newspapers, Inc.*, 1985 WL 5252 (E.D. Wis. 1985). And the Court finds no controlling authority for the proposition that the EEOC's laudable public mandate allows it to alter substantive individual rights. On the contrary, the EEOC's public enforcement actions have only a minimal focus on such individual rights:

> The EEOC's primary role is that of a law enforcement agency and it is merely a detail that it pays over any monetary relief obtained to the victims of the defendant's violation.

*In re Bemis Co.*, 279 F.3d at 421. Thus, barring the claims of those employees who were employed outside of the filing period here would do little to frustrate the primary public purpose of the EEOC's enforcement action because it would not impede the EEOC's ability to end Custom's purported hostile environment through injunctive remedies. *See EEOC v. North Gibson School Corp.*, 266 F.3d 607, 616 (7th Cir. 2001)(contrasting the "high level of public interest served when the EEOC seeks an injunction with the minimal public interest served by an individual monetary award").

### 2. Forward time limits on the class

Custom also seeks to limit class membership in the forward-looking direction. According to Custom, the appropriate cut-off date here is the date the representative charge was filed. (Custom calculates this to be June 26, 2000.) Custom argues that the "piggyback" doctrine only allows the joinder of other claims if they arise out of similar discriminatory treatment in the same time frame.

See *Hipp*, 252 F.3d at 1217. To hold otherwise would purportedly frustrate the requirements of notice to the employer (and the EEOC). See *id.* at 1225. The EEOC, in turn, argues that there is no Seventh Circuit authority supporting Custom's position. Indeed, the EEOC notes that Seventh Circuit authority shows that it is not limited to the allegations in the filed charge, but rather may bring an action based on any claims that arise in the course of a reasonable investigation. See, *e.g.*, *EEOC v. Temple Steel Co.*, 723 F. Supp. 1250, 1252 (N.D. Ill. 1989); *Walner II*, 91 F.3d at 968. By analogy, the EEOC argues that it may therefore include any additional claims of sex harassment from additional parties that it uncovers during its investigation. See *id.*

Ironically, the strongest support for the EEOC's position can be traced back to the principal opinion that Custom relies upon, *Hipp*, rather than the case law cited by the EEOC. In *Hipp*, the Eleventh Circuit limited the forward scope of an opt-in class to the date the representative charge was filed. See *Hipp*, 252 F.3d at 1225. The court noted that the primary purpose of the charge-filing requirement was to put the employer (and the EEOC) on notice of claims. See *id.* In holding that the representative charge at issue did not put the employer on notice of subsequent claims, the *Hipp* court specifically noted that the charge "did not explicitly allege that the violation was continuing." See *id.* at 1225, n.20. Thus, *Hipp* can be distinguished on the basis that the governing charge did not encompass continuing violation allegations. See *id.* More

significantly, the *Hipp* plaintiffs argued that the after-the-charge claims they sought to include in the class "related to or grew out of the allegations" in the governing charge - an argument very similar to the one offered by the EEOC here. *See id.* at 1225-26. The *Hipp* court acknowledged that there was authority supporting this position - and specifically cited Seventh Circuit case law for this proposition - but declined to follow such authority. *See id.* at 1226, *citing McDonald v. United Air Lines, Inc.*, 587 F.2d 357, 361 (7th Cir. 1979); *Levine v. Bryant*, 700 F. Supp. 949, 957 (N.D. Ill. 1988).

Curiously, neither party cites to this Seventh Circuit authority, but it nonetheless guides the decision here. In *McDonald*, plaintiffs brought a class action challenging an airline's no-marriage rule for flight attendants. In determining the period of recovery for the class, the Seventh Circuit held that the temporal limits of the class extended beyond the date of the filed charges and up to the date that the no-marriage policy ended. *See McDonald*, 587 F.2d at 361. The court reasoned that the "ruling is not unfair to United, for it was put on notice by [earlier plaintiffs'] filings that aggrieved stewardesses were challenging its no-marriage rule policy." *See id.* Similarly, in *Levine*, the district court allowed a plaintiff to opt-in the class after the governing charge was filed because the initial plaintiff's "EEOC charge put [defendant] on notice that someone was challenging its alleged age discrimination." *See Levine*, 700 F. Supp. at 957.

Custom cites no Seventh Circuit authority for its forward limit argument, and this Court sees no reason to contravene the authority provided in this circuit. Adopting *McDonald* and *Levine's* reasoning is consistent with the policy underlying charge-filing requirements, which provide an employer and the EEOC with notice about claims and conciliation opportunities. *See Horton v. Jackson County Bd. of Com'rs*, 343 F.3d 897, 899 (7th Cir. 2003). Especially in class actions, one charge typically suffices to alert the employer that other charges might follow. *See id.* Here, Custom cannot seriously argue that it lacks notice of potential subsequent claims arising from the EEOC's investigation. Nor can Custom argue that it is deprived of conciliation opportunities, given the two prior failed conciliation efforts. Moreover, the concerns about prejudice to the defendants that arise from stale claims, such as loss of evidence, memory, and witnesses, are not present here because of the relatively recent (and short) forward-looking time frame. Accordingly, the requirement that any additional claims go through the charge-filing procedure would not serve the purpose of this requirement and would merely lead to an increased burden for both the EEOC and the employer. *See id.*

## B. Limits on the Class in the Retaliation Action

Custom also seeks rearward and forward limits on the class in the retaliation action. This requires little extended discussion as the *Morgan* decision effectively nullifies the EEOC's position here (and the above discussion limiting the continuing violation doctrine

- 25 -

also applies to defeat the EEOC's argument). Specifically, *Morgan* forbids the application of the continuing violation doctrine to discrete acts of retaliation. *See Morgan*, 536 U.S. at 114-16. The EEOC "concedes that if the Court were to find its retaliation allegations constitute 'discrete acts' under *Morgan* there could be no continuing violation." EEOC Resp. Br. at 5, n.3. However, the EEOC contends that the Court cannot impose any limitations until after discovery. *See id.* Specifically, the EEOC "expects that discovery in the instant case will reveal a *policy* of retaliation constituting a continuing violation." *See id.* (emphasis in original).

Assuming *arguendo* that such a "policy" could render otherwise discrete acts subject to a continuing violation analysis after *Morgan*, the retaliation complaint does not contain any allegations of a particular retaliatory policy. The EEOC had opportunity to investigate these claims prior to filing the complaint and did not include such allegations. Instead, the complaint unmistakably alleges solely discrete retaliatory practices such as alteration of job duties, reduction in compensation, discipline, and discharge. *See* Compl. ¶ 8. These are precisely the sort of discrete acts that fall squarely under *Morgan*'s purview. *See Morgan*, 536 U.S. at 113. As a result, the EEOC cannot rely on the continuing violation doctrine to extend the limitations period in the retaliation action. (And, as indicated above, the continuing violation theory does not revive stale claims in any event.) Accordingly, the rearward limits proposed by Custom are appropriate here.

For the reasons noted above, however, the forward limit proposed by Custom is not applicable in the retaliation action.

### III. <u>CONCLUSION</u>

For the foregoing reasons, Custom's Motions to limit the Class in Cases Nos. 02-C-3768 and 03-C-2293 are **GRANTED** with regard to rearward time limits but **DENIED** with regard to forward time limits. **IT IS SO ORDERED.**

Harry D. Leinenweber, Judge
United States District Court

Date: April 7, 2004